UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| OSCAR DAVID PARDO, <br> TDCJ No. 1875636, <br><br> Petitioner, <br><br> v. <br><br> LORIE DAVIS, Director, Texas Dep't of <br> Criminal Justice-Correctional <br> Institutions Division, <br><br> Respondent. | CIVIL NO. SA-17-CA-00626-XR |

## MEMORANDUM OPINION AND ORDER

Oscar David Pardo, an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID"), filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for injury to a child, aged 14 years or younger. As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of the petition. Having considered the habeas application (ECF No. 1), Respondent's Answer (ECF No. 13), the record (ECF No. 14), and applicable law, the Court finds the petition should be **DENIED.**

### I. Procedural Background

Petitioner was charged by indictment with the felony offense of causing serious bodily injury to a child, aged 14 years or younger. Seeking to enhance his punishment, the State alleged Petitioner's prior conviction for aggravated assault with a deadly weapon. A jury found Petitioner guilty as alleged in the indictment, and after Petitioner entered a plea of "not true" to the enhancement paragraph, the trial court found the enhancement paragraph to be true and entered a finding of family violence. On July 19, 2013, Petitioner was sentenced to a term of 40 years' imprisonment.

Petitioner appealed and the Fourth Court of Appeals for Texas affirmed his conviction. *Pardo v. State*, No. 04–13–00530–CR, 2014 WL 7183365 (Tex. App.—San Antonio Dec. 17, 2014). Pardo then filed a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA"), which was refused. *Pardo v. State*, No. PD-0139-15 (Tex. Crim. App. 2015). Petitioner also filed two state applications for writ of habeas corpus, challenging his conviction; the TCCA dismissed the first because the direct appeal was still pending, and denied the second without a written order. (ECF No. 14-26). Pardo then filed a motion seeking to have the TCCA reconsider his state habeas application. After this motion was denied, Petitioner filed the instant federal petition.

## II.     Factual Background

The Fourth Court of Appeals summarized the facts presented at trial as follows:

Pardo and his girlfriend lived with Pardo's parents. The girlfriend had two children from a previous relationship – [a] five-year-old boy and a five-month-old boy. On one occasion, while the girlfriend was at school, Pardo's parents and the five-year-old left the house, leaving Pardo with the infant, O.M. When his parent[s] returned, they discovered O.M. was injured. O.M. was taken to the emergency room where he was diagnosed with a subdural hematoma, requiring surgery and a two-month hospital stay. Pardo testified the infant was injured while he was bathing him. According to Pardo, when the child was splashed with water, he jumped back and struck his head.

The Texas Department of Family and Protective Services ("the Department") became involved, removing O.M. from the home. Under the reunification plan established by the Department, O.M.'s mother was required to keep the children away from Pardo. Pardo was ultimately charged with injury to a child.

During the voir dire proceedings, venire member number 8 admitted he was biased against the State, and venire member number 17 admitted he could not sit in judgment of another. Pardo's attorney had an opportunity to question each venire member about their admissions. The State challenged each venire member for cause. Pardo objected to the State's challenges and requested an opportunity to rehabilitate the challenged members. The trial court overruled Pardo's objection and dismissed both venire members. Pardo's attorney then asked for additional peremptory strikes, which the trial court denied.

> At trial, the State called six witness[es]. One of the witnesses was a caseworker for the Department who was involved with O.M. and his mother. The caseworker testified that because Pardo was suspected of abusing O.M., the child's mother "was not allowed to let the children have access to Mr. Pardo." The caseworker also testified the mother's parental rights to O.M. were ultimately terminated because of physical abuse.
>
> After the caseworker provided some testimony without objection, Pardo's attorney asked to approach the bench to discuss the caseworker's testimony. During an in camera hearing, the parties and the trial court discussed the boundaries of the questions the State intended to pose to the Department caseworker. Pardo objected to the proposed testimony on grounds of relevancy and lack of probative value. The record establishes the trial court understood the objection to be a Rule 403 objection and conducted a balancing test, weighing the probative value of the testimony against the potential prejudicial impact. The trial court concluded the probative value of the evidence outweighed any potential prejudicial effect and permitted the State's questioning to continue over Pardo's objection.

(ECF No. 14-18).

### III. Standard of Review

#### A. Review of State Court Adjudications

Pardo's federal petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Pardo must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

**B. Review of Sixth Amendment Claims**

The Court reviews Sixth Amendment claims concerning allegations of ineffective assistance of trial counsel under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, in order to establish a violation of the Sixth Amendment right to counsel, a petitioner must demonstrate (1) counsel's performance was deficient and (2) this deficiency prejudiced petitioner's defense. *Id.* at 687-88, 690. According to

the Supreme Court, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

5

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## IV. Analysis

Petitioner contends his trial counsel, now deceased, "was so sick at trial he was not in command of the facts of the case" which deprived Petitioner of his Sixth Amendment right to counsel. In particular, Petitioner alleges the cumulative effect of the following errors and omissions rendered trial counsel's representation ineffective: failure to conduct any pretrial interviews; failure to interview and call the child's mother as a witness; failure to object to the relevancy of the Grand Jury foreman's testimony; "goading" Petitioner into testifying; failure to request a jury instruction on a lesser included offense; failure to request a "not guilty" instruction based on "no evidence"; and failure to object to the Jury Charge which, Petitioner contends, shifted the burden of proof. (ECF No. 1).

*1. Failure to Conduct Pretrial Interviews, Call a Witness and Object to Testimony*

Petitioner initially maintains trial counsel was ineffective in failing to seek out and interview witnesses. Petitioner complains that trial counsel commenced his cross-examination of each witness with the following question: "You and I have never met or talked before, have we?" Petitioner believes this "reflected poorly on counsel's pretrial preparation." Nevertheless, "counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691) (emphasis added). Further, a petitioner alleging an investigation is deficient must show what the investigation would have uncovered and how the petitioner's defense would have benefited from this information. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th

Cir. 1986). Here, the only two witnesses Petitioner identifies specifically are Mr. Hays, the Grand Jury foreman, and the child's mother, Anna Bracamontes. To the extent he fails to specifically identify other witnesses, Petitioner cannot show trial counsel was deficient in not conducting pretrial interviews since there is no indication of what the investigation of these unidentified witnesses would have disclosed or how Petitioner's defense would have benefited. *Nelson*, 989 F.2d at 850; *Lockhart*, 782 F.2d at 1282.

With respect to Mr. Hays, who was called as a witness, Petitioner maintains that had his trial counsel interviewed him prior to trial, he would have known the State intended to use Mr. Hays' testimony to bolster its case with hearsay testimony. Petitioner argues counsel should have objected to the relevancy of Mr. Hays' testimony and sought its exclusion, maintaining that were it not for Mr. Hays' bolstering testimony, the jury would have returned a verdict of not guilty. However, it appears trial counsel made the decision that further investigation of Mr. Hays was unnecessary. In fact, the trial record reflects that counsel understood the foreman was there to testify regarding manner and means. (ECF 14-12 at 63).

In deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89. Federal habeas courts presume counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011).

Here, Petitioner has not overcome the presumption that trial counsel's decision not to interview Mr. Hays fell within the wide range of reasonable professional assistance. Petitioner also fails to show that but for trial counsel's failure to interview and/or object to Mr. Hays' testimony, the results of the trial would have been different. Although Petitioner maintains the jury would not have convicted him were it not for Mr. Hays' "bolstering testimony," there was ample evidence the jury could have relied on in reaching its verdict. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (same).

Petitioner's mother testified when she and her husband left the house, the child was fine but upon their return, the child had to be taken immediately to the ER. (ECF No. 14-12 at 30-34). (Id.). No reason was ever provided for the child's injuries until the day of trial when Petitioner took the stand. He testified he was giving the baby a bath when water sprayed the baby's face, causing the baby to jump back and "hit himself" on the bathtub. (ECF No. 14-14 at 12). However, Dr. Riojos, the ER doctor in charge at Christus Santa Rosa where the child was first taken for treatment, testified the child's injuries were so severe the child required immediate neurosurgical treatment and had to be airlifted to University Hospital. (No. 14-13 at 96-99). Dr. Riojas also testified the child's injuries were not the kind of injuries he sees when children slip and fall, are dropped, or fall off beds. (Id. at 100-01). Additionally, Dr. Lukefher, the Medical Director of the Center for Miracles, testified in detail regarding the child's injuries.[1] (Id. at 56-84). He stated that based on his examination of the child and the physical evidence – i.e. the bleeding of the eyes, the swelling of the brain, the midline shift of the brain, and the bilateral

---

[1] The Center for Miracles is a clinic that examines children as outpatients but also sees children at either University Hospital or Santa Rosa when called by the treating physicians to examine a child believed to have been abused or neglected.

retinal hemorrhaging-- he believed the child's injuries were not the result of accidental trauma but indicative of extreme forces being exerted on the child, equivalent to a car wreck involving speeds of 60 miles per hour. (Id. at 81-84, 91-2). Based on the foregoing, Petitioner has not shown there is a reasonable probability that, but for counsel's failure to interview and/or object to Mr. Hays' testimony, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

With respect to the child's mother, Petitioner contends that had trial counsel interviewed her prior to trial, he would have learned she initially assumed responsibility for the injury only to later recant. Petitioner argues her testimony would have assisted his defense. However, counsel could reasonably have made a strategic decision in this regard, a decision entitled to deference by the Court. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, to support an ineffective-assistance claim); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified [to] is too uncertain"). A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct was strategically motivated and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985).

Although Petitioner maintains the child's mother stated she was responsible for the child's injuries, he presents no evidence to support this claim. Further, when asked this very question, Detective Manual Perez testified the child's mother never claimed she was responsible.

(ECF 14-13 at 17-18). Petitioner also fails to show the child's mother was available to testify and would have done so, what exactly she would have testified to, and that her testimony would, in fact, have been favorable to his defense. Accordingly, Petitioner fails to meet his burden of showing he was denied effective assistance of counsel. *Strickland*, 466 U.S. at 687-88, 690.

### 2. "Goading" Petitioner into Testifying

Petitioner next contends that although it was agreed prior to trial he would not testify because of a prior aggravated assault conviction with a deadly weapon, trial counsel "goaded" him into testifying against his wishes. Petitioner does not state how he was "goaded"; however, elsewhere in his petition, Pardo states he testified "against his better judgment." This suggests Petitioner made the decision to testify and was not compelled to do so. Moreover, Petitioner argues that because he testified the child hit its head while he was being bathed, Petitioner was entitled to an instruction on a lesser included offense. Thus, although he maintains trial counsel was deficient in "goading" him to testify, rather than show prejudice by counsel's alleged conduct, Petitioner argues that because of his testimony, he was entitled to a jury instruction. This hardly sounds prejudicial. In any event, Petitioner does not show how he was prejudiced by counsel's alleged conduct in "goading" him to take the stand. Accordingly, his claim of ineffective assistance of counsel fails. *Id.*, at 687.

### 3. Failing to request Instructions and Object to Jury Charge

As previously noted, in his federal habeas petition, Pardo maintains trial counsel was ineffective in failing to request an instruction on a lesser included offense because of his testimony that the child hit its head when accidentally splashed with water. Petitioner further contends trial counsel was deficient in failing to request an instruction of "not guilty" at the close of the State's evidence because there was no evidence or testimony from any source that

10

conclusively proved Petitioner caused any injury whatsoever to the child. However, in his state habeas action, Pardo alleged the trial court's charge to the jury impermissibly shifted the burden of proof and there was "no evidence" he caused the child's injuries as alleged in the indictment. He did not allege, as he does now, that trial counsel was ineffective in failing to request an instruction on a lesser included offense or to request a directed verdict once the State rested.

Exhaustion requires a petitioner "to present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Claims are not exhausted "if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003) ("The federal claim must be the 'substantial equivalent' of the claim brought before the State court."). If a petitioner did not provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim, the Court may conclude that the claim is procedurally barred from consideration on the merits in a federal habeas action. *Henry v. Cockrell*, 327 F.3d 429, 432 (5th Cir. 2003).

While the Court believes these claims have not been exhausted and are procedurally barred, Respondent does not contend Petitioner failed to exhaust these claims. In any event, Section 2254(b)(2) authorizes the avoidance of a procedural default or procedural bar analysis in favor of a rejection on the merits. *See Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (denying relief on the merits of a procedurally defaulted habeas claim). It is well settled that "counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The Fifth Circuit explained that "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (failure to object to the admission of extraneous offenses at penalty phase of capital murder trial

is not ineffective lawyering since unadjudicated extraneous offenses are generally admissible at this stage); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (failure to pursue a frivolous point cannot be deficient).

For reasons previously stated, there was ample evidence to support the jury's verdict that Petitioner was guilty of intentionally injuring the child. Additionally, the severity of the child's injuries were such that both doctors testified the injuries were not accidental and could not have been caused by a simple fall. As such, trial counsel was not deficient in failing to request either a directed verdict of not guilty or a jury instruction on a lesser included offense, both of which would have, in all likelihood, been denied.[2] *Koch*, 907 F.2d at 527. Further, rather than showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Petitioner simply discounts the evidence supporting the jury's verdict. Consequently, Petitioner fails to meet his burden with respect to both prongs required by *Strickland*, 466 U.S. at 687-88, 690.

Petitioner also maintains that trial counsel was deficient in failing to object to the Jury Charge which Petitioner claims shifted the burden of proof to the defense on a major element of the offense concerning intent and knowledge. In this case, the jury was charged as follows:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

---

[2] Moreover, trial counsel's strategy in seeking an acquittal of the offense of intentionally and knowingly causing injury to a child rather than seeking an instruction on the lesser included offense of recklessly causing injury to a child, arguably was a tactical decision that cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Cotton*, 343 F.3d at 752-53.

12

Citing *Sandstrom v. Montana*, 442 U.S. 510 (1979), Petitioner contends this instruction is unconstitutional because, as in *Sandstrom*, this instruction "presume[s] that Petitioner Pardo intended his conduct." However, in *Sandstrom,* the jury was instructed that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513. In the present case, the instruction did not include presumptive language and, in fact, tracked the language of Texas Penal Code Ann. § 6.03.

Moreover, Petitioner raised this, as well as his other claims (with the exception of the two claims noted above) in his application for state writ of habeas corpus, which the TCCA denied. The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001). Petitioner has failed to demonstrate that the TCCA's decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented. Accordingly, Petitioner's claims that he was denied effective assistance by his trial counsel lacks merit and are, therefore, DENIED.

## V. **Certificate of Appealability**

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to

show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that reasonable jurists would not debate the conclusion that Pardo was not entitled to federal habeas relief. As such, a COA will not issue.

## VI.     Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Oscar David Pardo's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Oscar David Pardo's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED.** It is so ORDERED.

SIGNED this 19th day of April, 2018.

_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE